## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **JAMES BEEDLE,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION FILE NO.** |
| | : | **1:14-cv-02394-AJB** |
| **CAROLYN W. COLVIN,** | : | |
| ***Acting Commissioner of*** | : | |
| ***Social Security,*** | : | |
| | : | |
| **Defendant.** | : | |

### O R D E R   A N D   O P I N I O N[1]

Plaintiff James Beedle ("Plaintiff") brought this action pursuant to sections

205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. §§ 405(g), 1383(c)(3), to

obtain judicial review of the final decision of the Commissioner of the Social Security

Administration ("the Commissioner") denying his application for Disability Insurance

Benefits ("DIB") and Supplemental Security Income Benefits ("SSI") under the Social

---

[1]     The parties have consented to the exercise of jurisdiction by the undersigned pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (*See* Dkt. Entries dated 1/7/15 & 1/8/15). Therefore, this Order constitutes a final Order of the Court.

Security Act.[2]  For the reasons below, the undersigned **REVERSES** the final decision of the Commissioner **AND REMANDS** the case to the Commissioner for further proceedings consistent with this opinion.

## I.    PROCEDURAL HISTORY

Plaintiff filed applications for DIB and SSI on May 12, 2011, alleging disability commencing on August 1, 2010.  [Record (hereinafter "R") 143-53].  Plaintiff's applications were denied initially and on reconsideration.  [*See* R90-93].  Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ").  [R108-10].  An evidentiary hearing was held on March 19, 2013.  [R56-89].  The ALJ issued a

---

[2]    Title II of the Social Security Act provides for federal Disability Insurance Benefits.  42 U.S.C. § 401 *et seq.*  Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.*, provides for Supplemental Security Income Benefits for the disabled.  Title XVI claims are not tied to the attainment of a particular period of insurance disability.  *Baxter v. Schweiker*, 538 F. Supp. 343, 350 (N.D. Ga. 1982).  Otherwise, the relevant law and regulations governing the determination of disability under a claim for DIB are nearly identical to those governing the determination under a claim for SSI.  *Wind v. Barnhart*, 133 Fed. Appx. 684, 690 n.4 (11th Cir. June 2, 2005) (citing *McDaniel v. Bowen*, 800 F.2d 1026, 1031 n.4 (11th Cir. 1986)).   In general, the legal standards to be applied are the same regardless of whether a claimant seeks DIB, to establish a "period of disability," or to recover SSI, although different statutes and regulations apply to each type of claim.  *See* 42 U.S.C. § 1383(c)(3) (establishing that the judicial provisions of 42 U.S.C. § 405(g) are fully applicable to claims for SSI).  Therefore, to the extent that the Court cites to SSI cases, statutes, or regulations, they are equally applicable to Plaintiff's DIB claims, and vice versa.

decision on May 20, 2013, denying Plaintiff's application on the ground that he had not been under a "disability" at any time through the date of the decision.  [R13-31]. Plaintiff sought review by the Appeals Council, and the Appeals Council denied Plaintiff's request for review on May 30, 2014, making the ALJ's decision the final decision of the Commissioner.  [R4-9].

Plaintiff then filed suit in this Court on July 25, 2014, seeking review of the Commissioner's decision.  [*See* Doc. 1].  The answer and transcript were filed on December 8, 2014.  [*See* Docs. 6, 7].  On January 7, 2015, Plaintiff filed a brief in support of his petition for review of the Commissioner's decision, [Doc. 9], and on February 6, 2015, the Commissioner filed a response in support of the decision, [Doc. 10].[3]  The matter is now before the Court upon the administrative record, the parties' pleadings, and the parties' briefs, and it is accordingly ripe for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

---

[3]      Plaintiff did not file a reply brief, and neither party requested oral argument.  (*See* Dkt.).

AO 72A
(Rev.8/8
2)

## II.    STATEMENT OF FACTS[4]

### A.    Background

Plaintiff was born on July 12, 1962, and therefore was forty-eight years old on the alleged onset date and fifty years old at the time the ALJ issued her decision. [R60, 90].  He completed high school, attended college, and obtained a degree in HVAC, although he never worked in HVAC.  [R60].  He alleges that he cannot perform any substantial gainful activity due to stroke, blurred vision, high blood pressure, blackouts, dizziness, post-traumatic stress disorder ("PTSD"), depression, and diabetes.  [R59, 172].

### B.    Lay Testimony

Plaintiff testified that he considered himself healthy until he was robbed and beaten while working at Kroger in or around August 2010.  [R62-63].  He stated that after what he had been through, he did not like to be around other people.  [R66].

### C.    Administrative Records

In an adult function report dated January 23, 2012, Plaintiff stated that he rarely spends time with others and the only place he goes on a regular basis is to church.

---

[4]    In general, the records referenced in this section are limited to those deemed by the parties to be relevant to this appeal.  [*See* Docs. 9, 10].

4

[R217].  He also reported that his medication causes bad mood swings and that he does not want to be bothered by other people and would rather be alone.  [R218].  He stated, however, that he gets along well with authority figures and has never been fired or laid off from a job because of problems getting along with other people.  [R219].

### D.    Medical Records

Plaintiff was hospitalized from February 12, 2011, through February 16, 2011, for acute onset of slurring and right arm and leg weakness and numbness, all of which was transient.  [R265, 268, 295].  His blood pressure was also elevated.  [R265].  Plaintiff reported that he had lost feeling in his arm and leg and that when he tried to stand up, he fell.  [R269].  He was transported by EMS to Emory.  [R269].  He was originally admitted to the intensive-care unit for blood-pressure management because he had a fluctuating neurologic examination, and he was then transferred to the floor for ongoing management.  [R269].  Imaging in Plaintiff's brain, head, and neck revealed an area of restricted diffusion in the left basal ganglia measuring approximately 0.9 millimeters.  [R269, 281-84].  A CT of the head documented mild periventricular white matter hypodensity, likely reflecting chronic microangiopathic changes.  [R289].  An echocardiogram revealed left ventricular ejection fraction of sixty percent; impaired relaxation pattern of LV diastolic filling; tricuspid and

5

AO 72A
(Rev.8/8
2)

thickened aortic valve; mild aortic valve insufficiency; and mildly increased left ventricular wall thickness.  [R276].  On discharge, Plaintiff had 4+/ 5 strength in his right upper extremity, and his other extremities were 5/5.  [R269].  He had decreased amplitude on fast finger taps on the right arm.  [R269].  In Plaintiff's plan of treatment, it was noted that "aggressive medical management is imperative."  [R269].  Diagnoses were left basal ganglia punctate ischemic infarct, most likely secondary to small-vessel disease; uncontrolled hypertension secondary to noncompliance; dyslipidemia; prediabetes; and tobacco abuse.  [R268].

Plaintiff followed up with treatment for "blacking out" and insulin-dependent diabetes at Grady Hospital.  [*See, e.g.*, R408-16].

On July 6, 2011, Plaintiff presented to Grady Hospital's Adult Intake Clinic for a scheduled appointment.  [R336].  He reported depression, nightmares that kept him from sleeping at night, anxiety, paranoia, and hyperalertness due to being robbed at gunpoint in August 2010.  [R336].  He was referred for PTSD counseling.  [R337].

In a Residual Functional Capacity ("RFC") form completed on September 13, 2011, nonexamining state agency review physician Arthur Schiff, M.D., opined that Plaintiff could occasionally lift fifty pounds; frequently lift twenty-five pounds; stand and/or walk about six hours in an eight-hour workday; sit about six

AO 72A
(Rev.8/8
2)

hours in an eight-hour workday; and must avoid even moderate exposure to hazards. [R340-46].

On November 9, 2011, Plaintiff's eyes were examined by Althea L. Turk, M.D., P.C. [R355-57]. Dr. Turk found that Plaintiff had mild hypertensive retinopathy[5] and refractive error/presbyopia.[6] [R355]. On November 14, 2011, non-examining state agency review physician James H. Dew, M.D. opined in an RFC form that Plaintiff had "normal vision and fields," with some limitations in acuity. [R358-65].

On November 17, 2011, Plaintiff underwent a psychological evaluation administered by Debra M. Lewis, Ph.D. [R366-70]. Dr. Lewis noted prior diagnoses of PTSD and major depressive disorder. [R366]. Dr. Lewis also noted that Plaintiff reported working for Kroger or a contractor of Kroger as a truck driver from May 2010 to September 2010, reported having fairly steady employment as a truck driver for various companies over the five or six years before that, and denied having any difficulty getting along with his coworkers or supervisors. [R367]. He reported

---

[5] Retinopathy is noninflammatory degenerative disease of the retina. *PDR Med. Dictionary* 1538-39 (1st ed. 1995).

[6] Presbyopia refers to the inability to focus up close, which commonly occurs as people age. NIH Nat'l Eye Inst. (NEI), Facts About Presbyopia, https://nei.nih.gov/health/errors/presbyopia (last visited 3/21/16).

AO 72A
(Rev.8/8
2)

flashbacks of the robbery, nightmares, hypervigilance, irritability, insomnia, and avoidance of Kroger and other grocery stores because he associated them with the robbery.  [R367].

Dr. Lewis noted that Plaintiff was taking Paxil[7] and trazodone.[8]  [R367].  When assessed for symptoms of depression, Plaintiff endorsed depressed mood, anhedonia, insomnia, low energy, psychomotor retardation, feelings of worthlessness, and difficulty concentrating.  [R367].  Dr. Lewis observed that Plaintiff's mood was dysthymic, his energy level and processing speed appeared to be very slow, he presented with some problems in memory and attention, and he displayed limited insight and judgment.  [R368].  She did not find evidence of malingering or symptom exaggeration.  [R369].

Dr. Lewis's diagnostic impressions were major depressive disorder, single episode, moderate; PTSD; and cognitive disorder NOS (provisional).  [R369].  She

---

[7]      Paxil (paroxetine) is a selective serotonin uptake inhibitor ("SSRI") used to treat depression, panic disorder, and social-anxiety disorder.  MedlinePlus, Paroxetine, http://www.nlm.nih.gov/medlineplus/druginfo/meds/a698032.html (last visited 3/21/16).

[8]      Trazodone is a serotonin modulator used to treat depression. MedlinePlus, Trazodone, http://www.nlm.nih.gov/medlineplus/druginfo/meds/a681038.html (last visited 3/21/16).

8

opined that Plaintiff could understand, remember and follow simple instructions; his memory, attention, and concentration appeared to be somewhat limited; "it may take him longer than many others to complete tasks in the workplace"; he was "[a]voidant and irritable"; he "may have difficulty getting along with others in public settings, coworkers and supervisors"; and when faced with a stressor "he would likely cope maladaptively and withdraw."  [R370].

In a Mental RFC Assessment dated December 5, 2011, non-examining state agency review physician David A. Williams, Ph.D., opined that Plaintiff was moderately limited in his ability to: 1) understand and remember detailed instructions; 2) carry out detailed instructions; 3) maintain attention and concentration for extended periods; 4) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; 5) interact appropriately with the general public; 6) accept instructions and respond appropriately to criticism from supervisors; 7) get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and 8) respond appropriately to changes in the work setting.  [R488-89]. Dr. Williams opined that Plaintiff was able to follow simple directions; that he was "episodically" unable to maintain pace but could maintain attention for periods of up to two hours at a time with typical breaks allowed; his ability to maintain concentration

9

and persistence was not substantially limited; contact with the general public, coworkers, and supervisors should not be frequent or prolonged; and he "could use some assistance in making realistic plans for the future."  [R490].

In a Psychiatric Review Technique dated December 7, 2011, Dr. Williams noted the existence of affective disorders and anxiety-related disorders.  [R492].  He opined that Plaintiff had moderate difficulties in maintaining social functioning and moderate difficulties in maintaining concentration, persistence, or pace.  [R502].

In an RFC form completed on March 16, 2012, nonexamining state agency review physician Emerson Ham opined that Plaintiff could occasionally lift fifty pounds, frequently lift twenty-five pounds, stand and/or walk about six hours in an eight-hour workday, sit about six hours in an eight-hour workday; could never climb ladders, ropes, or scaffolds; could frequently reach overhead with his right upper extremity; could frequently perform fine manipulation with his right upper extremity; and must avoid even moderate exposure to hazards.  [R526-33].

In a Mental RFC Assessment dated April 4, 2012, nonexamining state agency review physician Joseph Garmon, Ph.D., opined that Plaintiff was moderately limited in his ability to: 1) understand and remember detailed instructions; 2) carry out detailed instructions; 3) maintain attention and concentration for extended periods; 4) complete

10

a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; 5) interact appropriately with the general public; 6) accept instructions and respond appropriately to criticism from supervisors; and 7) get along with coworkers or peers without distracting them or exhibiting behavioral extremes. [R534-35]. In a Psychiatric Review Technique completed on the same date, Dr. Garmon noted the existence of affective disorders and anxiety-related disorders, [R512], and opined that Plaintiff had moderate difficulties in maintaining social functioning and moderate difficulties in maintaining concentration, persistence, or pace, [R522].

### E. *Vocational-Expert Testimony*

The vocational expert ("VE") testified that Plaintiff had past relevant work experience as a cook, long-haul truck driver, delivery truck driver, maintenance technician, and restaurant manager. [R85]. In response to the ALJ's questioning about a person of Plaintiff's age, education, and past work, who could work at all exertional levels, but must avoid working in dim lighting or work involving reading of fine print; could perform no climbing of ladders, ropes, or scaffolds; must avoid concentrated exposure to workplace hazards, including dangerous machinery and unprotected

AO 72A
(Rev.8/8
2)

heights; could perform no work involving driving; would be limited to simple, routine, repetitive tasks involving no more than simple work-related decisions and few workplace changes; and could have only rare interaction with the public and occasional interaction with coworkers and supervisors, the VE testified that the person could not perform Plaintiff's past work but could perform representative occupations such as booth cashier, Dictionary of Occupational Titles ("DOT") code of 211.462-010, with 300 jobs in the state and 40,000 in the national economy; laundry sorter, DOT code of 361.687-014, with 550 jobs in the state and 65,000 in the national economy; and housekeeper/cleaner, DOT code 323.687-014, with 18,000 jobs in the state and more than 500,000 in the national economy.  [R86-87].  The VE further explained that the job of booth cashier did not require any routine interaction with the public because often, people could do that job without interaction with the public because "they have [an] apparatus to make the exchanges."  [R86].

## III.   ALJ'S FINDINGS OF FACT

The ALJ made the following findings of fact and conclusions of law:

1.    The claimant meets the insured status requirements of the Social Security Act through September 30, 2015.

2.      The claimant has not engaged in substantial gainful activity since August 1, 2010, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

. . .

3.      The claimant has the following severe impairments: major depressive disorder (MDD), post traumatic stress disorder (PTSD), status post stroke, decrease vision with mild hypertensive retinopathy, and diabetes mellitus (DM) (20 CFR 404.1520(c) and 416.920(c)).

. . .

4.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

. . .

5.      After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: avoid working in dim lighting or work involving reading of fine print; no climbing of ladders, ropes or scaffolds; avoid even moderate exposure to workplace hazards including dangerous machinery and unprotected heights; no work involving driving; limited to simple, routine repetitive tasks involving no more than simple work related decisions and few workplace changes; and rare interaction with public and occasional [interaction] with co-workers and supervisors.

. . .

AO 72A
(Rev.8/8
2)

6.     The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

. . .

7.     The claimant was born on July 12, 1962 and was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.     The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

. . .

11.    The claimant has not been under a disability, as defined in the Social Security Act, from August 1, 2010, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[R16-26].

Plaintiff alleges error only with regard to the ALJ's consideration of his claimed vision and mental limitations.[9] [Doc. 9 at 7-11].  The ALJ explained that in reaching her conclusion with regard to limitations in Plaintiff's vision, she gave Dr. Dew's assessment "significant weight" because it was consistent with other medical opinions and the record as a whole, [R24]: specifically, eye examinations showing that Plaintiff had mild hypertensive retinopathy and refractive error/presbyopia, with normal pressure and 20/70 vision in both eyes (uncorrected), and better eyesight than Plaintiff alleged, [R22, 321, 355-65].  As to her conclusions with regard to Plaintiff's mental limitations, the ALJ explained that she gave the opinions of state agency psychological consultants Dr. Williams and Dr. Garmon "some weight as it pertains to handling simple instructions and may become irritable [sic], because this is consistent with other medical opinions and the record as a whole," [R20, 488-505, 512-25], and that she

---

[9]    In his brief, Plaintiff further alleged that "the jobs [the VE] identified do not accommodate Plaintiff's hearing limitations."  [Doc. 9 at 11].  Plaintiff does not cite any record evidence showing a limitation in his hearing or argue that he claims disability arising from a hearing loss.  [*Id*., *passim*].  The Court also finds nothing in the record suggesting that Plaintiff suffered any loss in his hearing, and despite the Commissioner's having pointed out in her response brief that Plaintiff did not allege hearing problems as a basis for disability, [Doc. 10 at 16], Plaintiff did not file a reply brief, (*see* Dkt.).  Consequently, the Court presumes that the hearing-limitation reference in Plaintiff's brief is the result of a scrivener's error and gives the reference no further consideration.

15

AO 72A
(Rev.8/8
2)

gave the opinion of examining psychological consultant Dr. Lewis "great weight . . . inasmuch as it is consistent with the record as a whole," [R23, 366-70].  The ALJ also explained that because Plaintiff's ability to work at all exertional levels had been compromised by nonexertional limitations, she relied upon VE testimony to find Plaintiff capable of performing work as a booth cashier, laundry sorter, and housekeeping cleaner, which testimony the ALJ stated she also found to be consistent with the information contained in the Dictionary of Occupational Titles.  [R25-26].

## IV.    STANDARD FOR DETERMINING DISABILITY

An individual is considered disabled for purposes of disability benefits if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).   The impairment or impairments must result from anatomical, psychological, or physiological abnormalities which are demonstrable by medically accepted clinical or laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do previous work but cannot, considering age, education, and work experience,

16

engage in any other kind of substantial gainful work that exists in the national economy.  42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The burden of proof in a Social Security disability case is divided between the claimant and the Commissioner.  The claimant bears the primary burden of establishing the existence of a "disability" and therefore entitlement to disability benefits. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a).  The Commissioner uses a five-step sequential process to determine whether the claimant has met the burden of proving disability.  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a); *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).  The claimant must prove at step one that he is not undertaking substantial gainful activity.  *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments that significantly limits his ability to perform basic work-related activities.  *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  At step three, if the impairment meets one of the listed impairments in Appendix 1 to Subpart P of Part 404 (Listing of Impairments), the claimant will be considered disabled without consideration of age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  At step four, if the claimant

17

is unable to prove the existence of a listed impairment, he must prove that his impairment prevents performance of past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  At step five, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides past relevant work.  *See* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  The Commissioner must produce evidence that there is other work available in the national economy that the claimant has the capacity to perform. *Doughty*, 245 F.3d at 1278 n.2.  To be considered disabled, the claimant must prove an inability to perform the jobs that the Commissioner lists.  *Id.*

If at any step in the sequence a claimant can be found disabled or not disabled, the sequential evaluation ceases and further inquiry ends. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).   Despite the shifting of burdens at step five, the overall burden rests on the claimant to prove that he is unable to engage in any substantial gainful activity that exists in the national economy.  *Doughty*, 245 F.3d at 1278 n.2; *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds by* 42 U.S.C. § 423(d)(5), *as recognized in Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1214 (11th Cir. 1991).

18

## V.    SCOPE OF JUDICIAL REVIEW

A limited scope of judicial review applies to a denial of Social Security benefits by the Commissioner.  Judicial review of the administrative decision addresses three questions:  (1) whether the proper legal standards were applied; (2) whether there was substantial evidence to support the findings of fact; and (3) whether the findings of fact resolved the crucial issues.  *Washington v. Astrue*, 558 F. Supp. 2d 1287, 1296 (N.D. Ga. 2008); *Fields v. Harris*, 498 F. Supp. 478, 488 (N.D. Ga. 1980).  This Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).  If substantial evidence supports the Commissioner's factual findings and the Commissioner applies the proper legal standards, the Commissioner's findings are conclusive.  *Lewis v. Callahan*, 125 F.3d 1436, 1439-40 (11th Cir. 1997); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987) (per curiam); *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986) (per curiam); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

"Substantial evidence" means "more than a scintilla, but less than a preponderance."  *Bloodsworth*, 703 F.2d at 1239.  It means such relevant evidence as

19

a reasonable mind might accept as adequate to support a conclusion, and it must be enough to justify a refusal to direct a verdict were the case before a jury. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Hillsman*, 804 F.2d at 1180; *Bloodsworth*, 703 F.2d at 1239. "In determining whether substantial evidence exists, [the Court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986) (per curiam). Even where there is substantial evidence to the contrary of the ALJ's findings, the ALJ decision will not be overturned where "there is substantially supportive evidence" of the ALJ's decision. *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991). In contrast, review of the ALJ's application of legal principles is plenary. *Foote v. Chater*, 67 F.3d 1553, 1558 (11th Cir. 1995); *Walker*, 826 F.2d at 999.

## VI.    CLAIMS OF ERROR

Plaintiff first asserts that the ALJ erred when she assigned "great weight" to the opinion of consulting examiner Dr. Lewis but failed to state how the RFC incorporates Dr. Lewis's findings that it may take Plaintiff longer than many others to complete tasks in the workplace; that Plaintiff "may have difficulty getting along with others in public settings, coworkers, and supervisors; and that when faced with a stressor,

20

Plaintiff would likely cope maladaptively and withdraw.     [Doc. 9 at 7-10 [citing R370]].  Plaintiff also argues that he is unable to perform the jobs identified by the VE because the jobs do not accommodate Plaintiff's visual limitations; the cashier and housekeeper/cleaner jobs require interaction with the public; and the laundry sorter and cashier jobs suggest ability to keep pace.  [*Id*. at 11].  Plaintiff further contends that the "booth cashier" job is not described in the DOT, and he takes issue with the lack of an offer of proof as to the manner in which the VE determined the numbers of the specific subtype of cashier.  [*Id*.].  The Court first considers the arguments implicating the ALJ's consideration of Plaintiff's mental limitations, then turns to the contentions regarding Plaintiff's ability to work as a booth cashier, laundry sorter, or housekeeper/cleaner.

### A.    *Mental Limitations*

Plaintiff first argues that the ALJ erred when she gave "great weight" to the opinion of consulting physician Dr. Lewis, [R23], but did not explain how the RFC accommodates Dr. Lewis's opinions that it may take Plaintiff longer than many others to complete tasks in the workplace, that he was avoidant and irritable and may have difficulty getting along with coworkers, supervisors, and others in public settings, and that when faced with a stressor, Plaintiff would likely cope maladaptively and

21

withdraw, [R370]. [Doc. 9 at 7-10]. The Commissioner, in response, contends that the ALJ applied the proper legal standards and that the mental RFC is supported by substantial evidence. [Doc. 10 at 9-15]. The Court addresses each of the alleged errors in the order raised in Plaintiff's brief.

### 1.    *Limitations in Pace*

Plaintiff contends that the ALJ erred by failing to explain how the RFC accommodates Dr. Lewis's opinions that it may take Plaintiff longer than many others to complete tasks in the workplace. [Doc. 9 at 8-9]. In response, the Commissioner points out that the ALJ gave Dr. Lewis's opinion "great weight . . . inasmuch as it is consistent with the record as a whole," [R23 [quoted in Doc. 10 at 9]]; asserts that Dr. Lewis opined that Plaintiff's "memory, attention, and concentration appeared to be 'somewhat' limited so that it 'may' take him longer than many others to complete tasks in the workplace," [Doc. 10 at 9 [citing R370]]; contends that "the ALJ found that despite Plaintiff's moderate limitations in maintaining concentration, persistence, or pace, the record supported that Plaintiff could perform simple, routine, repetitive tasks, involving no more than simple work-related decisions," [Doc. 10 at 9 [citing R19-20, 23]]; and avers that in *Winschel v. Commissioner of Social Security*, 631 F.3d 1176 (11th Cir. 2011), the court stated that when medical evidence

22

demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the claimant to unskilled work sufficiently accounts for a rating of "moderate" difficulties in maintaining concentration, persistence, or pace, [Doc. 10 at 9 (citing *Winschel*, 631 F.3d at 1180-81)].

As an initial matter, the Court finds the Commissioner's response not to be an argument so much as a series of assertions. [*See* Doc. 10 at 9]. In other words, it is not entirely clear how the Commissioner believes the assertions stated in her response show that the ALJ applied the proper legal standards in evaluating Plaintiff's pace limitations or that the ALJ's decision not to state a pace limitation in the RFC is supported by substantial evidence.

Second, several of the assertions in the Commissioner's response brief appear crafted to create an inaccurate impression of the source material. For instance, while the Commissioner appears to suggest that Dr. Lewis stated that her opinion regarding Plaintiff's pace limitations was dependant upon her determination that Plaintiff's memory, attention, and concentration appeared to be somewhat limited, [*see* Doc. 10 at 9 ("As to Dr. Lewis's opinion that Plaintiff's memory, attention, and concentration appeared to be 'somewhat' limited *so that* it 'may' take him longer than

many others to complete tasks in the workplace . . . ." (emphasis added))], reference to Dr. Lewis's opinion shows that she expressly considered examination findings relating not only to Plaintiff's memory, attention, and concentration, but also to his pace ("very slow processing speed") and cognitive ability (noting Plaintiff's inability to calculate three single-digit multiplication problems and two simple word problems and his history of stroke and concussion) and made a series of findings:

> [Plaintiff] is able to understand, remember and follow simple instructions. His memory, attention and concentration appear to be somewhat limited *and* it may take him longer than many others to complete tasks in the workplace. Avoidant and irritable, he may have difficulty getting along with others in public settings, coworkers and supervisors. If faced with a stressor he would likely cope maladaptively and withdraw.

[R369-70 (emphasis added)]. Thus, to the extent that the Commissioner suggests that the pace findings were dependent on the memory, attention, and concentration findings and that it is therefore axiomatic that the accommodations the ALJ included in the RFC to address Plaintiff's memory, attention, and concentration limitations also addressed Dr. Lewis's opinion as to Plaintiff's pace limitations, the Court finds that position unavailing.

The Court finds similar miscues in the Commissioner's reference to the ALJ's findings with regard to Plaintiff's ability to maintain concentration, persistence, or

24

pace.  [*See* Doc. 10 at 9].  In her response brief, the Commissioner suggests that the ALJ expressly considered Plaintiff's pace limitations: "[T]he ALJ found that despite Plaintiff's moderate limitations in maintaining concentration, persistence, or pace, the record supported that Plaintiff could perform simple, routine, repetitive tasks, involving no more than simple work-related decisions."  [*Id*.].  Review of the decision reveals, however, that the ALJ's discussion of Plaintiff's limitations in the area of concentration, persistence, or pace made no reference to Dr. Lewis's opinion that Plaintiff has a "very slow processing speed" and that "it may take him longer than many others to complete tasks in the workplace":

> With regard to concentration, persistence or pace, [Plaintiff] has moderate difficulties in understanding, remembering, and carrying out detailed instructions, and maintaining attention and concentration for extended periods.  He is capable of understanding and remembering simple instructions and can concentrate and persist in simple tasks, which has been included in his RFC.

[R19-20].  The Court therefore finds no basis for a determination that Dr. Lewis's opinions that Plaintiff has a slow processing speed and is likely to complete work tasks slowly were accommodated in the RFC.

The Court also finds the Commissioner's citation to *Winschel* to be, at best, of questionable value to her position that the ALJ properly evaluated Plaintiff's pace

25

limitations.  [*See* Doc. 10 at 9].  In *Winschel*, the plaintiff asserted that the ALJ erred by failing to discuss elements of the examining physician's medical opinion that pertained to his moderate limitations in maintaining concentration, persistence, and pace.  *Winschel*, 631 F.3d at 1179-80.  Contrary to what the Commissioner's citation to *Winschel* would appear to suggest, the court did not find that the medical evidence demonstrated that the claimant could engage in simple, routine tasks, or unskilled work despite limitations in concentration, persistence, and pace, and that limiting the hypothetical to include only unskilled work therefore sufficiently accounted for his limitations.  *Compare id*. at 1180 *with* [Doc. 10 at 9].  Instead, the *Winschel* court recognized that "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefore" and that when the ALJ rejects pertinent elements of an examining physician's opinion, he or she must provide "clearly articulated grounds" for doing so.  *Winschel*, 631 F.3d at 1179.  The court then found that the ALJ had in fact failed to explain why the RFC did not account for all of the impairments and limitations appearing the examining physician's medical opinion; found that it was therefore impossible to determine whether the ALJ's treatment of the medical opinion was rational and supported by substantial evidence; and *reversed and remanded* the matter for further explanation or revision of the RFC.  *Id.* at 1180-81.

26

Indeed, analogizing *Winschel* to the case at hand, it is evident that the ALJ below similarly erred: despite finding at step two that Plaintiff had moderate difficulties in concentration, persistence, or pace, [R19-20]; and recognizing that examining physician Dr. Lewis had opined that Plaintiff's processing speed appeared to be very slow, that there did not seem to be evidence of malingering or symptom exaggeration, and that it may take Plaintiff longer than many others to complete tasks in the workplace, [R23]; the ALJ did not explain how the limit included in the RFC would enable Plaintiff to maintain a pace necessary for competitive work, [*see* R19-10, 23-24].

Thus, after careful consideration of the ALJ's decision, the undersigned concludes that the ALJ did not clearly articulate her grounds for her treatment of Dr. Lewis's opinion that Plaintiff is limited in his ability to maintain a pace necessary for competitive work. As a result, the undersigned cannot determine whether the decision not to include a pace limitation in the RFC is rational and supported by substantial evidence. The undersigned therefore **REVERSES** the ALJ's decision and **REMANDS** the matter so that the ALJ may explicitly consider and explain the weight accorded to Dr. Lewis's opinions that Plaintiff has a "very slow processing speed" and

27

that "it may take him longer than many others to complete tasks in the workplace," and amend the RFC as necessary.

### 2.    Ability to Cope with Stress

Plaintiff also contends that the ALJ did not properly address Dr. Lewis's opinion that "[i]f faced with a stressor he would likely cope maladaptively and withdraw." [Doc. 9 at 8 [citing R370]].  He points out that Social Security Ruling ("SSR") 85-15[10] recognizes that reactions to work stress are highly individualized, that the claimant's mental condition may make even the performance of simple work as difficult as an objectively more demanding job, and that "[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC

---

[10]    Social Security Rulings are published under the authority of the Commissioner of Social Security and are binding on all components of the administrative process.  *See Sullivan v. Zebley*, 493 U.S. 521, 530 n.9 (1990); *see also Tauber v. Barnhart*, 438 F. Supp. 2d 1366, 1377 n.6 (N.D. Ga. 2006) (Story, J.) (citing 20 C.F.R. § 402.35(b)(1)).  Although SSRs do not have the force of law, they are entitled to deference so long as they are consistent with the Social Security Act and regulations. *Massachi v. Astrue*, 486 F.3d 1149, 1152 n.6 (9th Cir. 2007); *see also Salamalekis v. Comm'r of Soc. Sec.*, 221 F.3d 828, 832 (6th Cir. 2000) ("If a Social Security Ruling presents a reasonable construction of an ambiguous provision of the Act or the agency's regulations, we usually defer to the SSR."); *Minnesota v. Apfel*, 151 F.3d 742, 748 (8th Cir. 1998) ("Social Security Rulings, although entitled to deference, are not binding or conclusive."); *Pass v. Chater*, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995); *Gordon v. Shalala*, 55 F.3d 101, 105 (2d Cir. 1995); *Andrade v. Sec'y of Health and Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993).

AO 72A
(Rev.8/8
2)

assessment." [Doc. 9 at 9 (citing SSR 85-15; *Leon ex rel. Leon v. Astrue*, Civ. Action No. 1:10-CV-00041-AJB, 2011 WL 1296082, at *15 (N.D. Ga. Mar. 29, 2011) (Baverman, M.J.))].

In response, the Commissioner argues that stress itself is not a work-related limitation but instead is a condition that can *result* in various mental work-related limitations and that Plaintiff failed to show that he had some stress-related mental limitation that the ALJ should have incorporated into the RFC. [Doc. 10 at 13-14 (citing SSR 85-15; *Moore v. Colvin*, Civ. Action No. 3:13CV704-WC, 2014 WL 4999175, at *2 (M.D. Ala. Oct. 7, 2014); *Atha v. Colvin*, No. 4:12-CV-3549-MHH, 2014 WL 4829575, at *3 (N.D. Ala. Sept. 29, 2014); *Nelson v. Colvin*, Civ. Action No. 13-00294-B, 2014 WL 3767596, at *3 (S.D. Ala. July 31, 2014))]. The Commissioner further contends that the ALJ accommodated any potential work-related limitations that Dr. Lewis did identify that could be attributed to difficulty dealing with stress and "withdrawal" by restricting him to simple, routine, repetitive tasks involving no more than simple work-related decisions and few workplace changes; rare interaction with the public; and occasional interaction with coworkers and supervisors. [Doc. 10 at 14-15 [citing R19-20]].

29

Having carefully reviewed the ALJ's decision, the Court concludes that its treatment of Dr. Lewis's opinion with regard to Plaintiff's ability to cope with stress also constitutes reversible error.  As Plaintiff points out, SSR 85-15 makes clear that opinion evidence indicating deficiencies in the claimant's ability to cope with stress is highly relevant to the determination of whether the claimant is capable of meeting the demands of a job, and "[a]ny impairments-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment."   SSR 85-15.   Here, Dr. Lewis opined that "[i]f faced with a stressor[, Plaintiff] would likely cope maladaptively and withdraw." [R370].  The ALJ recognized that Dr. Lewis had rendered the opinion, [R23], but made no further mention of Plaintiff's ability to cope with stress—not to expressly limit the RFC to low-stress work, to explain how the limitations included in the RFC inherently accommodated limitations arising from Plaintiff's deficiencies in his ability to cope with stress, or, alternatively, to explain why she did not credit Dr. Lewis's opinion that Plaintiff is likely to respond to stress maladaptively and to withdraw in the face of it, [*see* R16-26].

Interestingly, the Court again finds the Commissioner's case citations to be more favorable to Plaintiff's position than to her own.  Unlike the matter at hand, none of the

cases the Commissioner cited involved a challenge to the ALJ's failure to accommodate a stress limitation in the RFC; in fact, unlike the RFC at issue here, in each of the cases, the stress-related accommodations were expressly defined as such in the RFC. *See Moore*, 2014 WL 4999175 at *2 (limiting the plaintiff to "simple, repetitive, and routine one to three steps *in a low stress job*, defined as having only occasional decision making, changes in the work setting, and interaction with the public and co-workers" (emphasis added)); *Atha*, 2014 WL 4829575 at *3 (limiting the plaintiff to "a *low stress work environment*, defined as no production rate or goal oriented work" (emphasis added)); *Nelson*, 2014 WL 3767596 at *3 (limiting the plaintiff to "simple, routine, and repetitive one-to-three step tasks in a *low stress job*, defined as having only occasional decision making, occasional changes in the work setting, occasional interaction with coworkers, and no interaction with the public" (emphasis added)).

 Moreover, it is impossible to say that the ALJ's failure to explain how the RFC sufficiently accommodated limitations arising from Plaintiff's deficiencies in his ability to cope with stress is harmless. The requirement of maintaining production pace is recognized as a potential source of stress, *see Atha*, 2014 WL 4829575 at *3 (defining "a low stress work environment," as "*no production rate* or goal oriented

work" (emphasis added)), and as was discussed in detail above, there is opinion evidence suggesting that Plaintiff may have difficulty maintaining production pace even in a simple job, yet the RFC contains no limitation regarding pace, [*compare* R20 *with* R370].

Thus, the undersigned concludes that the ALJ did not clearly articulate her grounds for her treatment of Dr. Lewis's opinion that if faced with a stressor, Plaintiff "would likely cope maladaptively and withdraw." [R370]. As a result, the undersigned cannot determine whether the accommodations included in the RFC inherently address Plaintiff's deficiencies in his ability to cope with stress. The undersigned therefore **REVERSES** the ALJ's decision and **REMANDS** the matter so that the ALJ may explicitly consider and explain the weight accorded to Dr. Lewis's opinion regarding Plaintiff's ability to cope with stress and, if appropriate, amend the RFC.

### 3.     *Interaction with the Public, Coworkers, and Supervisors*

Plaintiff also contends that the ALJ erred by providing no rationale for her determination that Plaintiff could engage in only "rare" interaction with the public but was capable of engaging in "occasional" interaction with coworkers and supervisors. [Doc. 9 at 10]. He asserts that "occasional" interaction "does not speak to the ability

AO 72A
(Rev.8/8
2)

to respond appropriately to supervision and coworkers" and that the differentiation between the levels of interaction is arbitrary and could affect the outcome of the case. [*Id.*].

Standing alone, this allegation of error would not provide additional grounds for reversal. The only evidence Plaintiff points to in support of his allegations of social limitation is Dr. Lewis's opinion that because he is "[a]voidant and irritable, he may have difficulty getting along with others in public settings, coworkers and supervisors." [Doc. 9 at 8, 10 [citing R370]]. Plaintiff does not argue that a limitation to no more than occasional interaction with the public, coworkers, and supervisors would be insufficient to accommodate the opinion, but rather appears to contend that it was reversible error for the ALJ to further limit Plaintiff's interaction with the public to "rare" without explaining why she did not do the same with regard to Plaintiff's interaction with coworkers and supervisors. [Doc. 9 at 8, 10]. Plaintiff does not provide any authority suggesting that the ALJ was required to explain why she restricted Plaintiff's interaction with one group more than another where there has been no showing that the RFC insufficient to accommodate the medical opinions of record. [*See id.*]. Thus, the Court finds nothing in Plaintiff's brief to suggest that the ALJ's failure to explain the distinction was anything more than harmless error. Moreover,

AO 72A
(Rev.8/8
2)

as the Commissioner points out, it appears likely that the ALJ placed greater restrictions on Plaintiff's interaction with the public because the robbery and beating he experienced was so often cited as the source of his social limitations, [*see, e.g.*, R62-64, 66], and Plaintiff himself had reported that he gets along well with authority figures and had never been fired or laid off from a job because of problems getting along with other people, [R219].  [Doc. 10 at 10].

For these reasons, the undersigned finds that the social limitations stated in the RFC are supported by substantial evidence.  Nevertheless, upon remand, the ALJ should consider whether her reevaluation of Dr. Lewis's opinion as to Plaintiff inability to cope with stress may also implicate his ability to interact with the public, coworkers, and supervisors.

### B.      *Plaintiff's Ability to Perform Other Work*

Plaintiff also argues that he is unable to perform the jobs identified by the VE because the jobs do not accommodate Plaintiff's visual limitations; the cashier and housekeeper/cleaner jobs require interaction with the public; and the laundry sorter and cashier jobs suggest ability to keep pace.  [Doc. 9 at 11].  He further contends that ALJ's finding regarding the number of "booth cashier" jobs available in the local and national economy is not supported by substantial evidence.  [*Id.*].

34

The Court is not persuaded that the ALJ erred in finding the identified occupations compatible with Plaintiff's need to avoid working in dim lighting or work involving the reading of fine print. The hypothetical question the ALJ posed to the VE incorporated the eyesight limitations, [R86], and the VE stated that a person with such limitations would be able to work as a booth cashier, a laundry sorter, or a housekeeping cleaner, [R86-87], thus providing substantial evidence to support the ALJ's determination that Plaintiff was able to work in those occupations despite his need to avoid working in dim lighting or reading fine print, *see Jones v. Apfel*, 190 F.3d 1224, 1229-30 (11th Cir. 1999) (holding that where the hypothetical question comprises all of the claimant's impairments, the VE's testimony constitutes substantial evidence). However, because it appears likely that upon remand at least a pace limitation—and possibly other mental limitations associated with Plaintiff's limitations in coping with stress—will be added to the RFC, it will be necessary for the ALJ to reevaluate the jobs he may be capable of performing in light of all of his limitations. *See supra* Part VI.A.

Additionally, to the extent that the ALJ may again rely on a determination that Plaintiff is capable of working as a "booth cashier," her reasons for doing so will also require further review. In addition to his assertion that there is not substantial evidence

AO 72A
(Rev.8/8
2)

to support a finding that the limitations in his vision would allow him to work as a booth cashier, Plaintiff further argues that the ALJ erred in finding him capable of such work because a "booth cashier" is a subtype of the DOT-listed occupation of Cashier II, yet there has been no offer of proof as to the manner in which the VE determined the number of jobs available.  [Doc. 9 at 11].  He also contends that a cashier interacts with the public all day and that the VE's statement that a "booth cashier" would accommodate "rare" interaction with the public conflates the frequency of the interaction with the depth of the interaction.  [*Id*.].

The Court finds no grounds for reversal in Plaintiff's challenge to the sufficiency of the evidence supporting her determination as to the number of "booth cashier" jobs available in the national and local economy.  Plaintiff cites no authority in support of his suggestion that a VE must show proof of the manner in which he determined the number of available jobs.  [*See id*.].  Therefore, the issue is not properly before the Court. *See Outlaw v. Barnhart*, 197 Fed. Appx. 825, 827 n.3 (11th Cir. Aug. 10, 2006) (per curiam) (finding that the plaintiff waived an issue by failing to elaborate on the argument or provide a citation to authority regarding the argument).

Moreover, the undersigned finds little traction in the argument.  The regulations provide that the Commissioner may use a VE to determine whether a claimant can

36

AO 72A
(Rev.8/8
2)

perform work existing in significant numbers in the national and regional economy. *See* 20 C.F.R. §§ 404.1566(e), 416.966(e); *see also Curcio v. Comm'r of Soc. Sec.*, 386 Fed. Appx. 924, 926 (11th Cir. July 15, 2010) (per curiam) ("[T]he Social Security regulations clearly allow that the Commissioner may rely on a VE for her knowledge or expertise."); *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) ("A vocational expert is an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments.").  At the hearing held before the ALJ, Plaintiff's counsel did not object to the qualifications of the VE, [R84], and although Plaintiff's attorney cross-examined the VE, Plaintiff's attorney did not object to the VE offering an opinion about the number of jobs existing in the relevant economy.  [*See* R86-88]. Faced with similar challenges to VE testimony in other cases, the Eleventh Circuit has held that the VE's testimony was relevant evidence that a reasonable person would accept as adequate to support the conclusion that there is work available in significant numbers in the national economy that the claimant is able to perform and that the testimony therefore constituted substantial evidence.  *See, e.g., Pena v. Comm'r of Soc. Sec.*, 489 Fed. Appx. 401 (11th Cir. Sept. 12, 2012) (per curiam) (holding that the VE's testimony provided substantial evidence of the number of jobs available where the VE testified that he used his experience and personal knowledge to account for the

AO 72A
(Rev.8/8
2)

plaintiff's limited grasp of English but would not testify regarding the specific formula he used to arrive at the reduced number of jobs, explaining that a VE's testimony "can supplement the Dictionary of Occupational Titles with more detailed 'employment information from a personal survey, contact with employers and other VEs, and survey of literature' ") (quoting *Jones*, 190 F.3d at 1230); *Bryant v. Comm'r of Soc. Sec.*, 451 Fed. Appx. 838, 839 (11th Cir. Jan. 4, 2012) (per curiam) (holding that reductions based on census figures, state information, labor-market surveys, and job analyses are reasonable and that an ALJ may rely on a VE's knowledge and expertise without requiring the VE to produce detailed reports or statistics in support of the testimony); *Leonard v. Comm'r of Soc. Sec.*, 409 Fed. Appx. 298, 301 (11th Cir. Jan. 19, 2011) (holding that the ALJ was entitled to rely on the VE's testimony even though the basis for the testimony was the VE's personal experience rather than information that was professionally obtained).  Consequently, the undersigned finds that the VE's testimony provided substantial evidence for the ALJ's determination that the occupation of "booth cashier" represents 40,000 jobs in the national economy and 300 jobs in Georgia.

The Court, however, is not convinced that the ALJ's determination that the job of booth cashier is compatible with the limitation to no more than rare interaction with

38

the public is rational and supported by substantial evidence.  When the ALJ asked for jobs accommodating the restrictions listed in the RFC, the VE did testify that the job of "booth cashier" accommodated a limitation to no more than "rare" interaction with the public.  [R86].  However, the VE testimony was remarkably equivocal and conclusory:

> I've got essentially, let's see, the—I'll try to—rare [sic] *and you may object to this*, but the job of a booth cashier does not require any routine interaction or transaction with the public.  Often they do it without any because they have apparatus to make the exchanges.  So I think rare would be all right for that job.

[R86 (emphasis added)].  Indeed, the Court finds the testimony so equivocal and conclusory as to preclude the Court from finding that it constitutes substantial evidence to support the ALJ's determination that Plaintiff is capable of working as a booth cashier:  Why might the ALJ have objected to the testimony?  Why did she not object?  What apparatus would enable a cashier to engage in only "rare" interaction with public?  Neither the VE testimony nor the ALJ's decision provide means of answering these questions.  Thus, the Court has no basis upon which to conclude that the ALJ's determination that Plaintiff could work as a booth cashier was rational and supported by substantial evidence.

39

Accordingly, to the extent that the ALJ may, upon remand, again base a finding of non-disability on a determination that Plaintiff is capable of working as a booth cashier, she must explain not only why the job accommodates any limitations she may find it appropriate to add to the RFC but also accommodates Plaintiff's existing limitation to only "rare" interaction with the public.

## VII.  CONCLUSION

For the reasons above, the Court **REVERSES** the final decision of the Commissioner and **REMANDS** the case for further proceedings consistent with this opinion.  The Clerk is **DIRECTED** to enter final judgment in Plaintiff's favor.

**IT IS SO ORDERED and DIRECTED,** this the 25th day of March, 2016.

ALAN J. BAVERMAN
UNITED STATES MAGISTRATE JUDGE

40